**In re MAKUCH.**

[Cite as *In re Makuch* (1995), 101 Ohio App.3d 45.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005889.

Decided Feb. 8, 1995.

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Michael D. Illner,* Assistant Prosecuting Attorney, for appellee Lorain County Children's Services.

*John Kovacs,* guardian *ad litem,* for Kimberly Makuch.

*Hollace Weizel,* for appellant Kimberly Makuch.

*Freddie Springfield,* guardian *ad litem* for Stephanie Makuch.

**46**

MILLIGAN, Justice.

On May 23, 1994, the Lorain County Juvenile Court granted permanent custody of Stephanie Makuch (d.o.b. 2/20/92) to Lorain County Children's Services, terminating parental rights of Kimberly Makuch, the natural mother. The mother appeals, assigning a single, multifaceted error:

"The trial court erred to the prejudice of appellant and in violation of O.R.C. 2151.414, the Fourteenth and Ninth Amendments to the United States Constitution, and Article I, Section 1 of the Ohio Constitution, when it terminated the parental rights of appellant and granted permanent custody of the minor child to Lorain County Children Services, where the evidence failed to satisfy the requisite standard of proof."

Within two months of the birth of this child, the Lorain County Children's Services intervened, responding to psychiatric testimony that the mother was unable to care for the baby because of depression. Following procedural preliminaries, protective custody was granted April 29, 1992. The child has not been in the custody and control of the mother since that date.

On May 29, 1992, the baby was found to be dependent, and Children's Services was granted temporary custody. A case plan was developed pursuant to R.C. 2151.412; this plan included reunification steps to be taken by the parties, such as stable housing, child development training, regular visitation, psychiatric treatment, investigation of birth control, and a determination of paternity.

Consistent with the monitoring provisions of Ohio's reunification process, five semiannual reviews were held.

The motion for permanent custody was filed March 31, 1994, when the child was two years old. Following trial, the motion was granted with an explanatory judgment on May 29, 1992. The mother did not appear at the trial, but reports were filed by her guardian *ad litem* and the guardian *ad litem* for the child. All of the testimony was presented by Children's Services; the testimony came from a psychiatric caseworker and the agency's caseworker. The mother presented no testimony. In its judgment, the court found, *inter alia*, that Children's Services had provided reasonable case planning and diligent effort, and that the mother and the alleged father "have failed continuously and repeatedly for a period of more than six months to substantially remedy the conditions which caused the child to be placed outside the home * * * and further due to the fact that mother's severe and chronic mental and emotional illness renders her unable to provide an adequate permanent home for the child at the present time and in the foreseeable future within the meaning of O.R.C. 2151.414(E)(2); and further due to the fact that alleged father, Shawn Cawthon, has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communi-

cate with the child when able to do so within the meaning of O.R.C. 2151.414(E)(4) * * *."

██ Ohio's statutory scheme for dealing with the conflicting claims extant in contested dependency cases requires the juvenile court, by clear and convincing evidence, to find (1) that the grant of permanent custody (termination of parental rights) is in the best interest of the child, and (2) that "the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents." R.C. 2151.414(B)(1).

██ Our examination of the record satisfies us that all of the various procedural steps in termination proceedings have been met and that there is competent, credible evidence from which the trial court could, and did, conclude that termination was in the best interests of the child and that placement with parent(s) within a reasonable time was not possible. It is true that the mother made some progress in most of the areas concerned in the case plan. Notwithstanding this progress, it is also clear that efforts at reunification of mother and child had to be aborted, essentially due to the mother's lack of stability. Thus, overnight visitations were discontinued when the mother became more and more unsettled and was hospitalized for major depression.

Based primarily upon the mental and emotional health of the mother, the guardians *ad litem* for both the mother and the child recommended permanent custody.

Both the best interests of the child and the capacity of the mother to provide care and custody are affected by the fact that the child is a "special needs" child, with low to normal development, that she has had no contact with her sibling, that she has little bonding with her mother, and that she has been in foster care since age six weeks. The child is adoptable.

We find the judgment of the court to be supported by the evidence and overrule the single assignment of error.

This case is a classic example of the merit of the concept of "permanency planning," inaugurated in this country in the late 1970s. The principle is that children need permanency, the steady and reliable relationship with adults who will provide consistent care, support, discipline, and nurturing; that such should be provided with the natural parent(s); that the government should provide such services and support as appropriate to assist the family to care for its own children; and that only as a last resort should parental rights be terminated in favor of a new set of adoptive parents. Inherent in this scheme is the proposition that long-term foster care—the fate of many out-of-home children—worked to the detriment of such children, and that the difficult decision about long-term parenting should be made with reasonable dispatch. Thus, provisions were

enacted to get government out of the practice of perpetuating foster custody, and focus on providing assistance to adopting parents of such children. See Adoption Assistance and Child Welfare Act, P.L. No. 96–272; 1980 U.S.C.C.A.N. 1448, 1450–1468; 13 Milligan, West's Ohio Practice (Supp.1991), Section 501 *et seq.*

Here, that process—efforts at reuniting this child with her mother—has consumed over two years. The child's best interests are clearly served by getting on with the process of providing her with a permanent, stable, adoptive home.

The judgment of the Lorain County Juvenile Court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, sitting by assignment.