This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Robert Meador has appealed from a judgment of the Summit County Common Pleas Court, Juvenile Division, that terminated his parental rights and committed two of his children to the permanent custody of the Summit County Children Services Board (CSB). He has raised a single assignment of error, arguing that CSB failed to prove by clear and convincing evidence that he was not a suitable parent for his children. This Court affirms the judgment of the juvenile court.
On July 31, 1995, CSB filed an application with the juvenile court seeking to have three of Mr. Meador's children, Matthew, Amy, and Katie Meador, adjudicated neglected and dependent.[1]
A magistrate held a hearing on the matter and, on October 12, 1995, found that Matthew, Amy, and Katie were dependent children. On October 25, 1995, the juvenile court adopted the magistrate's decision. On November 7, 1995, the magistrate recommended that CSB be given temporary custody of Matthew and that Amy and Katie be placed in protective supervision. The children's mother filed objections to that decision, but, on November 22, 1995, the juvenile court overruled those objections and adopted the magistrate's decision.
On August 2, 1996, the magistrate recommended that Matthew be placed in long-term foster care with CSB, and that protective supervision continue over Amy and Katie. On August 19, 1996, CSB moved the juvenile court for emergency temporary custody of Amy and Katie. That motion was granted by the juvenile court. One month later, the juvenile court ordered that Amy and Katie be returned to their mother. On February 6, 1997, however, CSB was once again granted temporary custody of Amy and Katie.
On May 29, 1997, CSB moved for permanent custody of the children. A magistrate held a hearing on the matter during July and August of 1997. On October 1, 1997, that magistrate issued a decision that recommended the termination of Mr. Meador's parental rights regarding the three children.
Objections to the magistrate's decision were filed. On March 23, 1998, the juvenile court found merit to the objections and ruled that, due to deficiencies in notice to the parties, an additional day of trial was necessary. Those proceedings occurred June 29, 1998. On July 15, 1998, the juvenile court terminated the parental rights of Mr. Meador and committed Amy and Katie to the permanent custody of CSB. It determined, however, that long-term foster care was in the best interest of Matthew and, therefore, denied CSB's motion for permanent custody regarding that child. From the juvenile court's judgment, Mr. Meador timely appealed to this Court.
Mr. Meador's single assignment of error is:
The trial court erred in terminating [Mr. Meador's] paternalrights where the evidence shows [Mr. Meador] cared for hischildren immensely.
Mr. Meador has argued that the juvenile court incorrectly determined that he was not a suitable parent. According to Mr. Meador, the juvenile court did not find "parental fault" in his failure to be "ready, willing, and able to care for his children."
Although CSB moved for permanent custody regarding all three children, the juvenile court denied that motion as it related to Matthew. Instead of permanent custody, the juvenile court concluded that Matthew's best interests were served by keeping him in long-term family foster care. Only Amy and Katie were committed to the permanent custody of CSB. Mr. Meador has not challenged the juvenile court's decision to keep Matthew in long-term family foster care. He has instead challenged only the commitment of Amy and Katie to the permanent custody of CSB. Accordingly, this Court will not disturb the juvenile court's ruling that Matthew remain in long-term family foster care.
Section 2151.414 of the Ohio Revised Code provides the procedures that a juvenile court is required to follow to rule on a motion for permanent custody. In this case, the juvenile court had authority to grant permanent custody of the children to CSB if it determined, by clear and convincing evidence, that: (1) granting permanent custody would be in the best interest of the children; and (2) the children could not be placed with their parents within a reasonable time or should not be placed with their parents. Section 2151.414(B) of the Ohio Revised Code. This Court will address those two factors in turn.
 1. The Best Interest of the Children.
When a juvenile court determines the best interest of a child, for purposes of ruling on a motion for permanent custody, it is required to consider all relevant evidence, including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Section 2151.414(D) of the Ohio Revised Code. As to the first two factors, a foster parent and a child therapist testified that the two girls had no significant attachment to Mr. Meador. The girls did not express a desire to return to live with Mr. Meador and were not upset when told that they, in fact, would not return to him. The children's guardian testified that they did not want to return to Mr. Meador. In fact, Katie often asked her foster parent when she would be adopted, and seemed disappointed that she had not, as of the date of the hearing, been adopted. In addition, the girls had no significant attachment to each other. Apparently, competition between the two is intense, and they often stated that they did not want to be in the same house together. Finally, both girls had been sexually abused by their older brothers. Those facts supported the juvenile court's finding that the commitment of the children to the permanent custody of CSB was in their best interest.
As to the third factor, the juvenile court found that the children had been out of their parents' "care, custody and control" for more than a year at the time of the hearing. Testimony indicated that the children flourished in foster care and that, in the past when they visited Mr. Meador, they became upset and unruly. The juvenile court could have reasonably concluded by clear and convincing evidence that, from their custodial history and their success in foster care, the children's best interests were served by separation from Mr. Meador and by their commitment to the permanent custody of CSB.
Finally, testimony was presented that indicated that the two needed structure and order in their lives. The child therapist testified that the girls needed boundaries and that Mr. Meador failed to provide those boundaries.
Sufficient evidence existed to find that the children's interests were best served by their commitment to the permanent custody of CSB. The juvenile court did not err, therefore, by making that determination.
 2. The Placement of the Children With Their Parents.
When a juvenile court determines, for purposes of ruling on a motion for permanent custody, whether a child cannot be placed with either of her parents within a reasonable time or should not be placed with her parents, it is to consider all relevant evidence. Section 2151.414(E) of the Ohio Revised Code. If it finds, by clear and convincing evidence, the existence of one or more of the circumstances enumerated in Sections 2151.414(E)(1) through (12) of the Ohio Revised Code, then it is required to rule that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. In this case, the juvenile court found the existence of five of those twelve circumstances, from which it concluded that the children could not and should not be placed with Mr. Meador.
First, the juvenile court found by clear and convincing evidence the existence of the circumstance described in Section2151.414(E)(2) of the Ohio Revised Code. Pursuant to that section, the juvenile court found that Mr. Meador suffered from a:
 (c)hronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.
Mr. Meador suffers from schizophrenia. A doctor who examined him testified that, in his opinion, the children should not be placed with Mr. Meador. According to that doctor, Mr. Meador would probably neglect his children, due to his condition, if they were returned to his custody. Aggravating his condition was the fact that Mr. Meador refused to take his medication. In fact, evidence suggested that Mr. Meador had sold his medication. The juvenile court did not err, therefore, by finding that Mr. Meador's chronic mental illness prevented Mr. Meador from providing an adequate permanent home for the children. The existence of that factor alone obligated the juvenile court to find that the children could not and should not be placed with Mr. Meador. See Section2151.414(E) of the Ohio Revised Code; In re Makuch (1995),101 Ohio App.3d 45.
Second, the juvenile court found the existence of the circumstance described in Section 2151.414(E)(9) of the Ohio Revised Code. Pursuant to that section, the juvenile court was required to find that the children could not or should not be placed with Mr. Meador because:
 [t]he parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
Mr. Meador was unwilling to provide basic necessities for his children, and he failed to prevent the children from suffering physical, emotion, and sexual abuse while in his house. When the children first came to the foster home, they had no concept of personal hygiene. They did not want to bathe, brush their teeth, or wash their hands before they ate. They both had lice. In addition, Katie's brother had sexually abused her, as did her sister's boyfriend. She also observed Mr. Meador engaging in sexual conduct with his wife. Amy was disciplined by being whipped and slapped across the face while in Mr. Meador's house. Amy's brother and Katie often ridiculed her because, allegedly, Mr. Meador was not her biological father.
Sufficient evidence, therefore, existed demonstrating that Mr. Meador was unwilling to provide basic necessities to his children and was unwilling to prevent his children from suffering physical, emotional, and sexual abuse. The juvenile court did not err by finding the existence of the circumstance described in Section 2151.414(E)(9) of the Ohio Revised Code.
Third, the juvenile court found by clear and convincing evidence the existence of the circumstance described in Section2151.414(E)(12) of the Ohio Revised Code. Pursuant to that section, the juvenile court was required to find that the children could not or should not be placed with Mr. Meador based on "[a]ny other factor the court considers relevant." The juvenile court found that Mr. Meador had "engage[d] in child-like behavior, ha[d] disorganized thoughts, and ha[d] engaged in inappropriate sexual activities." The record in this case supported those findings. During a visit with his children, Mr. Meador told a sexually explicit joke. He also openly engaged in sexual intercourse with his wife, allowing his children to see him so engaged. Those factors were relevant and could have been relied upon by the juvenile court to determine that the children should not be placed with Mr. Meador. Furthermore, Amy suffered from adjustment disorder and Katie was diagnosed with major depression. Apparently, the treatment they endured while in Mr. Meador's house contributed to their conditions. The mental health of the children and the aggravation of their mental health while in Mr. Meador's custody were relevant factors demonstrating that they should not be placed with Mr. Meador.
Fourth, the juvenile court found the existence of the circumstance described in Section 2151.414(E)(1) of the Ohio Revised Code. That section required the juvenile court to find that the children could not or should not be placed with Mr. Meador if it found by clear and convincing evidence that:
 [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Mr. Meador failed to follow the case plan that had been specifically tailored to remedy the problems facing his household. That failure demonstrated that Mr. Meador had, notwithstanding the efforts of CSB to assist him, failed to remedy the problems that initially caused the children to be removed. Furthermore, Mr. Meador failed to attend counseling sessions and, as noted above, failed to take his medication to treat his schizophrenia. Those factors indicated that Mr. Meador had no interest in using "medical, psychiatric, psychological, and other social and rehabilitative services and material resources" that had been made available to him to change his conduct and to allow him to retain custody of his two children.
Finally, the juvenile court found that the circumstance described in Section 2151.414(E)(4) of the Ohio Revised Code existed. That section required the juvenile court to find that the children could not or should not be placed with Mr. Meador because:
 [t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing a unwillingness to provide an adequate permanent home for the child.
Unlike the evidence regarding the factors mentioned above, the evidence presented concerning this factor was weak. The State has claimed that testimony indicated that Mr. Meador had not demonstrated any interest in supporting, visiting, or communicating with his children. Specifically, CSB introduced testimony that the children had never mentioned that Mr. Meador had shown any interest or involvement with their lives. From that testimony, the State has concluded that the circumstance described in Section 2151.414(E)(4) existed.
Mr. Meador's brief has essentially attacked this last factor. He has argued that, according to his testimony, he did show active involvement with his children's lives and a willingness to provide an adequate home for them. Specifically, he has argued that he visited the children regularly, provided school supplies for them, helped them with their homework, and took them to see flower shows and car shows, as well as to visit Santa Claus and the Easter Bunny. According to Mr. Meador, CSB's evidence did not demonstrate, by clear and convincing evidence, that he had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with them or by being unwilling to provide an adequate permanent home for them. Even if this Court were to agree with Mr. Meador's argument, however, each and every condition of Section 2151.414(E) does not have to exist before a court may terminate parental rights. In re Beverly (Mar. 31, 1994), Ross App. No. 93 CA 1992, unreported, 1994 Ohio App. LEXIS 1459, at *11. Rather, the court may make its decision based on the existence of only one of the factors. Id. at *12.
In this case, the juvenile court had before it clear and convincing evidence of the circumstances listed in Sections2151.414(E)(1), (2), and (9) of the Ohio Revised Code, as well as relevant evidence falling under Section 2151.414(E)(12) of the Ohio Revised Code. Any one of those sections supported the juvenile court's determination that the children should not be placed with Mr. Meador. Consequently, the court did not err by making that determination.
From the evidence introduced at trial, the juvenile court could have concluded that the commitment of Amy and Katie to the permanent custody of CSB was in their best interest and that the two should not be placed with Mr. Meador. Mr. Meador's assignment of error is overruled and the judgment of the juvenile court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
FOR THE COURT
BAIRD, P. J.
SLABY, J.
CONCUR
[1] There seems to be some question regarding the paternity of these children. According to the record, Mr. Meador may not be the biological father of Amy and Katie Meador. This issue was not pursued and, apparently, the juvenile court assumed that Mr. Meador was the biological father of the children. This Court proceeds on that assumption.