DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Alease Fleming appeals the decision of the Summit County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her daughters Rolesha Fleming and Narday Rones to Summit County Children Services Board.[1] This Court affirms.
 I.
Children Services Board (CSB) first became involved with Fleming in January 1998, when allegations were made that her fourteen-month-old daughter Rolesha was neglected. Although the neglect could not be confirmed, Fleming voluntarily worked with a CSB social worker. On March 24, 1998, Fleming was convicted of aggravated trespass, and was sentenced to a six-month suspended sentence, with twelve months of probation. By June 1998, Fleming had been evicted from her apartment. She stayed at various homes for short periods, and finally moved in with her maternal grandmother. However, Fleming and her grandmother had irreconcilable differences, and the grandmother insisted that Fleming leave. Rolesha stayed with Fleming's grandmother, but the grandmother soon found that she could not care for Rolesha, and she called CSB to take temporary custody of the girl.
On August 4, 1998, CSB sought and obtained temporary emergency custody of Rolesha. At the time, Fleming was homeless, she was abusing drugs, and she was not providing adequate care for Rolesha, who had severe asthma. On September 8, 1998, a case plan was journalized for Fleming. To achieve reunification, the case plan included seven goals: maintaining stable housing; learning about child development and age appropriate behavior; maintaining a drug-free environment; refraining from criminal activity; completing a GED; participating in parenting classes; and meeting Rolesha's basic needs.[2] On September 14, the court adjudicated Rolesha a neglected child. CSB attempted a placement with Fleming's brother and his wife, but the placement did not work well. Rolesha was placed with a foster family with whom she still resides.
Despite the recently established case plan, Fleming failed to attend drug treatment programs and did not comply with the required drug screens. She even refused to take advantage of drug counseling via the telephone. Consequently, Fleming was terminated from the Community Drug Board program. Unknown to the CSB caseworker, Fleming was five months pregnant with Narday, who was born on October 31, 1998. Narday was born twelve weeks premature, and both mother and child tested positive for cocaine at the time of the birth. Narday weighed one and a half pounds at birth, and had to remain hospitalized until January 1, 1999. Shortly before Narday's release from the hospital, CSB sought and received temporary custody of her. Narday was placed in the same foster family as Rolesha.
On January 27, 1999, CSB sought permanent custody of Rolesha. After a hearing on February 1, the court adjudicated Narday an abused, neglected, and dependent child. The trial court scheduled a permanent custody hearing for both girls for April 12.
Fleming's progress on her case plan goals was minimal from September 8, 1998 to March 1999. During the two months that Narday was in the hospital, Fleming visited her some six or seven times, but she did not visit Narday at all during January 1999. Fleming did not visit Rolesha consistently after she was placed in foster care in September 1998. Between February 1 and March 16, 1999, Fleming's visits with the girls were more consistent. However, in mid-March, Fleming was incarcerated and could not maintain regular visits. Fleming began attending parenting classes in February 1999.
Fleming was able to achieve stable housing from September to December 1998, but she was again evicted, and then moved from shelter to shelter. Even her court-appointed attorney had difficulty contacting her. Fleming did not attend the February 1, 1999 adjudicatory hearing for Narday. Her attorney advised the court that Fleming had received five notices about the hearing, that he had notified her by mail, which was not returned as undelivered, and that he had not spoken to his client since the last hearing in September 1998.
On February 2, 1999, Fleming began attending the Exodus program, a drug abuse treatment program, to work on several of her case plan goals, specifically, obtaining drug treatment, improving her anger management, and completing her GED. Despite the fact that Fleming attended all the required programs, her counselor described her compliance as "minimal." Although the counselor considered her to be a "five out of five" as compared to other program participants, the counselor stated that most program participants do poorly in their first month of drug treatment. Exodus conducted three drug screens of Fleming while she was in the program. At the time of the permanent custody hearing, Exodus had results on two of those tests, and Fleming tested positive for cocaine in one of them. In mid-March, Fleming was again arrested, apparently for possession of drug paraphernalia.[3] Although Fleming had been on probation since March 1998, she failed to report to her probation officer from September 1998 to January 1999. Several days prior to the permanent custody hearing, Fleming was arrested for robbery. Her probation officer testified at the permanent custody hearing that on March 1, 1999, Fleming's probation had been extended for another year. He stated that because the robbery charge was a felony, Fleming would likely have to serve her probation violation in a state correctional facility.
By the time of the permanent custody hearing, Rolesha and Narday were flourishing in the care of their foster family. Both girls are developmentally delayed, and since their placement, both girls had received care designed to meet their special needs. Rolesha had bonded with Narday as well as with the two daughters of the foster parents. Rolesha's asthma was under control and she was in nursery school two days a week.
After the permanent custody hearing on April 12, 1999, the trial court granted permanent custody of both girls to CSB. Fleming now appeals, asserting one error.
 II. The Trial Court erred and abused its discretion when it awarded the Summit County Children Services Board permanent custody of Rolesha Fleming and Nardy [sic] Rones, because the decision is not supported by the evidence.
This court construes Fleming's assignment of error as challenging the trial court's decision because it is against the manifest weight of the evidence. The standard for reviewing a manifest weight challenge in a civil context is the same as that in a criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. When an appellate court reviews the weight of the evidence,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the appellant, should the appellate court reverse and order a new trial. Id. See, also, In re Rodriguez and Lopez
(Aug. 4, 1999), Lorain App. No. 98CA007073, unreported, at 18, quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingMartin, supra.
The termination of parental rights in Ohio is governed by R.C. 2151.414.[4] When a child is not orphaned or abandoned by a parent, the trial court cannot terminate parental rights unless it finds, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody to CSB, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(B)(1). See, also, In re Makuch (1995), 101 Ohio App.3d 45,47.
To determine the best interest of the child, the trial court must look at "all relevant factors," including the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
The custodial history of the child;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D).
The trial court below found that the "children herein have been essentially abandoned by their parents." Nonetheless, the court made the statutory determination that it was in the best interest of Rolesha and Narday to terminate permanent custody because (1) they need a legally secure permanent placement, which cannot be achieved without a grant of permanent custody to CSB, and (2) they are adoptable and have achieved a strong bond with the foster family. CSB presented evidence that the agency tried to accomplish placement with Fleming's brother and his wife, but that the placement did not work. Since September 23, 1998, Rolesha has been with the same foster family, which Narday joined after she left the hospital on January 1, 1999. The foster mother testified that she wants to adopt both girls together. She also testified that she has two adopted daughters, who have a strong bond with Rolesha and Narday. The guardian ad litem testified that the girls were adoptable, even if adoption by the foster family could not be achieved.
This court does not find that the evidence weighed heavily against the trial court's conclusion that it was in the best interest of Rolesha and Narday to terminate parental rights, pursuant to R.C. 2151.414(D).
Once the trial court has found by clear and convincing evidence that it is in the children's best interest to give permanent custody to the agency, the court must determine whether the children cannot be placed with either parent within a reasonable time, or the children should not be placed with either parent. R.C. 2151.414(E). The statute provides that, if the court finds by clear and convincing evidence that any one of twelve statutory circumstances exists as to the parent, the trial court "shall enter a finding that the [children] cannot be placed with the parent within a reasonable time or should not be placed with either parent." (Emphasis added.) Id.
Here, the trial court found that the following enumerated circumstances were pertinent to this case:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (8) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child;
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 (10) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
* * *
(12) Any other factor the court considers relevant.
R.C. 2151.414(E).
As to the first factor, the court reviewed each of the seven goals of her case plan, and it found that Fleming failed to comply with any of them. On appeal, Fleming argues that the trial court's conclusion was not supported by the evidence. Fleming points to testimony by the Exodus program caseworker in support of the proposition that she was beginning to achieve some of the case plan goals. However, a closer examination of that testimony does little to support this contention. The caseworker said that Fleming came to all required treatment sessions after she began the program on February 2, 1999. However, the caseworker also testified that Fleming's compliance was "minimal," and she acknowledged that Fleming had at least one positive drug screen in the six weeks of the program. Because of her incarceration, Fleming was unable to complete the program. The counselor testified that upon her release from jail (expected to be no earlier than September 1999), Fleming could complete the program, which would take six months.
From the time that a case plan was established on September 8, 1998, until the permanent custody hearing on April 12, 1999, Fleming had over seven months to substantially achieve her case plan goals. In that time, Fleming failed to substantially achieve any of her goals, including to obtain drug treatment, secure housing, complete her GED, or complete parenting classes. On appeal, Fleming contends that she did not have sufficient time to complete her goals. However, she calculates the time as of February 2, 1999, the first time she endeavored to put any effort into accomplishing any of her case plan goals. Because of her incarceration, Fleming was likely to be unable to even resume working on at least some of the goals for a minimum of five more months.
This court cannot say that the trial court clearly lost its way when it found that Fleming "failed continuously and repeatedly to substantially remedy the conditions causing [her children] to be placed outside [their] home." R.C. 2151.414(E)(1).
As to factor two, the court further found that Fleming had a chronic chemical dependency. This was supported by evidence that: Narday tested positive for cocaine at birth; Fleming tested positive for drugs on several occasions; and Fleming repeatedly failed to show up for drug screens. The Exodus counselor stated that once Fleming was released from jail (anticipated to be no sooner than five months after the hearing), she would be able to complete the program in six months. However, this is premised on a commitment to achieving a drug-free lifestyle, which Fleming had failed to demonstrate to that point.
This court cannot say that the trial court clearly lost its way when it found that Fleming had a chronic chemical dependency problem which was so severe that Fleming could not provide an adequate home for her children at the time of the hearing, and would not likely be able to provide an adequate permanent home within one year after the hearing.
As to factor four, the court further found that Fleming demonstrated a lack of support and commitment by failing to regularly visit and/or communicate with the girls and failing to provide for their basic necessities. The evidence before the court indicated that Fleming's visits with the children were sporadic at best. Throughout the autumn of 1998, Fleming was inconsistent in her visits with Rolesha. Although she began to visit on a more regular basis in February 1999, after CSB filed for permanent custody, Fleming was soon incarcerated, demonstrating a lack of commitment to these children.
As to factor eight, the court found that Fleming had repeatedly been incarcerated. At the time of the hearing, the trial court had before it evidence that Fleming would not be released from jail for at least five more months. On appeal, Fleming asserts that she had a single incarceration from September 1998 to April 1999. However, this assertion is without merit. The evidence before the trial court was: (1) on March 24, 1998, Fleming was convicted of aggravated trespass in Summit Common Pleas Court, for which she received a six month suspended sentence and twelve months of probation; (2) on March 1, 1999, the probation on this offense was extended for one year; (3) on four occasions from July 1998 to March 1999, she was charged with contempt in a Akron Municipal Court case arising out of charges of petty theft and misrepresenting her identification; (4) for at least two of the contempt charges she was sentenced to serve ten days in jail in March 1999; and (5) she was arrested on April 4, 1999, for robbery and she was still in jail awaiting trial at the time of the permanent custody hearing. The last criminal charge was pending at the time of the permanent custody hearing, but, if successfully prosecuted, might result in incarceration for the robbery and very likely would result in incarceration for probation violation on the March 28, 1998 offense.
This court cannot say that the trial court clearly lost its way when it found that Fleming was repeatedly incarcerated and that the repeated incarcerations prevented her from caring for her children.
Similarly, this court has reviewed the application of factors nine, ten, and twelve, and finds that these factors are also supported by the weight of the evidence recited above. There was clear and convincing evidence of several of the twelve circumstances enumerated in R.C. 2151.414(E) which mandate a finding that these children cannot be placed with Fleming in a reasonable time or should not be placed with her. There was also clear and convincing evidence that it was in the best interest of these children to grant permanent custody to CSB. Therefore, this court cannot say that a manifest miscarriage of justice resulted when the trial court terminated Fleming's parental rights and responsibilities and granted permanent custody of Rolesha and Narday to CSB.
Fleming's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT
BATCHELDER, P.J., WHITMORE, J., CONCUR
[1] Rolesha and Narday have different fathers. Although the parental rights of these fathers were also terminated, neither father appealed this decision.
[2] The case plan was modified and journalized on February 1, 1999. The new plan deleted the last goal, and replaced it with a goal of improving Fleming's anger management skills.
[3] There was some confusion as to the exact charges against Fleming at this time. It is clear that she was arrested for contempt in Akron Municipal Court. As to the assertion that Fleming was arrested twice, the trial court asked both sides if they wished to clarify the arrest record. Fleming's attorney declined to do so. One social worker testified later that she understood that one of the charges that arose in March 1999, was for possession of drug paraphernalia. Fleming did not challenge this statement.
[4] Substantial amendments to the text of R.C. 2151.414 took effect on March 18, 1999. Because the motion for permanent custody in this case was filed prior to the effective date of the amendments, however, we must apply the former version of the statute. See In re Thorn and Hammond (Feb. 16, 2000), Summit App. No. 19597, unreported, at 7, fn. 2, citing In re Seal (Mar. 16, 1998), Clermont App. No. CA-97-07-066, unreported, at fn. 3.