DECISION AND JOURNAL ENTRY
Angela Stanley appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division, granting permanent custody of her children Carlos Estrada and Angel Castillo to Summit County Children Services Board ("CSB").
Both before and after the permanent custody hearing, CSBasked the trial court to grant a six-month extension of temporarycustody in order to pursue a possible placement of these childrenwith family members. The agency now urges this court to affirmthe grant of permanent custody to CSB. This court is troubled bythe fact that CSB's position before this court is diametricallyopposed to the position it assumed before the trial court. CSBoffers no explanation why it now believes that the trial court'sdecision, which the agency so firmly opposed at the time, shouldnow be affirmed on appeal.[1]
This court reverses.
 I.
CSB first became involved with Angela Stanley ("Stanley") in 1996. Stanley was a single mother raising three children, Carlos Estrada, Angel Castillo, and Bianca Castillo.[2] Medical professionals treating Bianca reported to CSB that they believed Stanley was not properly meeting all of Bianca's medical needs.[3] After determining that Stanley was abusing drugs, CSB sought and received a protective service order for Bianca, in October 1996. On March 10, 1998, CSB took temporary custody of Bianca and emergency temporary custody of Carlos and Angel. Carlos and Angel, then nine and eight years old, were placed together in a foster home. On April 15, the court appointed the same guardian ad litem for Carlos and Angel that served as guardian ad litem for Bianca. On May 29, 1998, an adjudicatory and dispositional hearing took place, and the magistrate found that Carlos and Angel were dependent children. The magistrate granted temporary custody to CSB.
On January 22, 1999, CSB asked for a six-month extension oftemporary custody for Carlos and Angel, noting that Stanley hadcomplied with the drug treatment objectives, but had not yetachieved stable housing. On January 26, the guardian ad litemmoved the court to grant permanent custody to CSB, statingsummarily that Stanley "has not substantially complied with thecase plan objectives" and that it would be in the children's bestinterest "for permanent placement plans to be developed." OnJanuary 29, Stanley tested positive for drugs for the first timesince March 1998, despite having had thirty random drug testsduring that time. On March 18, 1999, CSB filed for permanentcustody for Angel and Carlos, stating that there were no relatives"willing and able to provide a permanent home for these children."
Stanley's mother and stepfather ("the grandparents") knew that CSB had temporary custody of the children, but believed they should take a "hands off" approach, requiring Stanley to deal with CSB's case plan objectives on her own. However, once the grandparents discovered, quite inadvertently, that permanent custody of Carlos and Angel might be granted to CSB, they filed a motion for legal custody on April 8, 1999. After discovering that the grandparents were willing to be involved with the boys, CSB decided to seek a six-month extension of temporary custody for purposes of pursuing the possibility of placement with the grandparents. On April 29, CSB filed a motion to modify their motion for permanent custody, requesting an extension of temporary custody.
On May 10-13, 1999, the trial court held a hearing on the motion for permanent custody and on the grandparents' motion for legal custody. All parties were permitted to submit written closing arguments. In its closing argument, CSB again urged the court to grant a six-month extension of temporary custody to determine if placement with the grandparents could be achieved. On June 1, 1999, the trial court denied the grandparents' motion for legal custody, and granted permanent custody to CSB.
Stanley asserts on appeal that the trial court erred in terminating her parental rights because there was not clear and convincing evidence to support either of the trial court's determinations that (1) Carlos and Angel could not be placed with Stanley within a reasonable time, and (2) permanent custody was in the best interest of Carlos and Angel.[4] Because our decision on the best interest finding is determinative, we need not address Stanley's first assignment of error.
 II.
Stanley challenges the trial court's decision on the basis that it is not supported by clear and convincing evidence, as required by R.C. 2151.414.[5] This court has stated that "[t]he standard of clear and convincing evidence * * * must produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported, at 7. When reviewing the termination of parental rights, "[a] reviewing court will not disturb the judgment of a juvenile court which is supported by some competent credible evidence going to all the essential elements of the case." In re Parsons (May 29, 1996), Lorain App. No. 95CA006217, unreported, at 3.
When a child is not orphaned or abandoned by a parent, thetrial court may not terminate parental rights unless it finds, byclear and convincing evidence, that (1) it is in the best interestof the child to grant permanent custody to CSB, and (2) the childcannot be placed with either parent within a reasonable time orshould not be placed with either parent. R.C. 2151.414(B)(1).See, also, In re Makuch (1995), 101 Ohio App.3d 45, 47.
To determine the best interest of the child, the trial court must look at "all relevant factors," including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D). The trial court found that there was clear and convincing evidence to support a grant of permanent custody to CSB because Angel and Carlos needed a legally secure placement which could not be achieved without the grant of permanent custody to CSB. For the reasons outlined below, this court disagrees.
Stanley, the grandparents, the foster mother, and five treatment providers testified at the permanent custody hearing. The guardian ad litem also addressed the court. CSB case records and a parenting evaluation were admitted as exhibits. The guardian ad litem also filed her report and an amended report with the court, recommending that permanent custody be granted to CSB.[6]
The testimony about the boys' interactions with significant others was uncontroverted. Angel and Carlos both had a very close bond with their mother. They also were very close to the grandparents. The boys, who were ten and nine years old, stated to several service providers that they want to live with their mother and, if they could not return to their mother's home, they would like to live with their grandparents. The boys also have a very strong bond with one another. The one paramount concern expressed by every person who worked with these boys was that the boys should not be separated from one another.
There was testimony that the boys had done well in the foster home where they had lived for fourteen months. However, the foster mother testified that because her own family was experiencing some difficulties, she had asked that the boys be placed in a different foster home when the school year ended in June 1999. Another foster family was prepared to start caring for the boys in June.
The evidence relating to the boys' relationships with other people weighed in favor of maintaining their relationships with their biological family, if possible, and against a grant of permanent custody to CSB.
Looking at the children's custodial history, the boys had been in foster care for fourteen months at the time of the permanent custody hearing. Although this is a long time in the life of a child, it cannot compare with the nine and eight years these boys spent with their mother, who for most of that time was the sole custodian. This is especially true where, as here, the bond with the foster family was not particularly strong.
As to the wishes of Angel and Carlos, the guardian ad litemadmitted that she did not ask the boys where they wanted to live.However, several people testified that the boys expressed theirdesire to remain with their mother, or in the alternative, withthe grandparents. The trial court may view the children's wishes"as expressed * * * through the child[ren]'s guardian ad litem, withdue regard for the maturity of the child[ren]." R.C.2151.414(D)(2). The guardian ad litem summarily stated that it was in the best interest of the boys to grant permanent custody to CSB.
As to the possibility of a legally secure placement, the guardian ad litem, who was the sole advocate for the termination of parental rights at the hearing, told the trial court that the boys were "adoptable." However, when questioned about the prospect of adoption, the guardian ad litem acknowledged that no one had expressed an interest in adoption at this point. When asked about the prospects of keeping the boys together, whether in another foster placement or in an adoptive home, the guardian adlitem admitted that there was no guarantee that the boys would remain together. The only evidence on the issue of adoption or a permanent placement was the testimony of a CSB caseworker who said that it is difficult to achieve adoption for older children, especially minority children.
Although the other six members of the case plan team wantedto pursue placement with the grandparents, the guardian ad litemopined that "any home is better than where they came out of andwhere they could go with grandma and granddad." Nonetheless, theguardian ad litem acknowledged that she had met with or spoken tothe grandparents on only four occasions, twice via telephone. Thefirst occasion was in May 1998, when the guardian ad litem tookthe boys from the foster home for a visit at the grandparents'home. The visit lasted several hours, but the guardian ad litemspent most of the time on the front porch, allowing the family tovisit in private. The second occasion was a phone call a weeklater. On January 19, 1999, the guardian ad litem again calledthe grandparents. The fourth occasion was on May 6, 1999, justprior to the permanent custody hearing, when the grandparentsvisited with all three children and Stanley at CSB. Thegrandparents had four such visits with the children subsequent tofiling their motion for legal custody for Angel and Carlos, butthe guardian ad litem attended only one visit. Both grandparentstestified that the guardian ad litem was there for only fifteenminutes. The guardian ad litem testified that she was there forforty minutes. However, the guardian ad litem stated thatgenerally in her visits with families, "I stay long enough, youknow, to see what I need to see" and "I say hello."
Several CSB workers had some concern about the relationship between Stanley and the grandparents, and about the grandparents' commitment to the boys. Stanley testified that in December 1992, when she decided to leave her abusive boyfriend, she and her children returned to Ohio and lived with the grandparents for five months. After Stanley and her children moved out of the grandparents' home, the grandparents helped them obtain another apartment, and the grandparents visited them weekly until some time in 1996. However, in 1996 Stanley began abusing drugs, and consequently avoided contact with the grandparents. In 1998, the grandparents became aware that the children were in the custody of CSB. However, they believed that they could best help Stanley by taking a "hands off" approach and letting Stanley deal with the issue of her drug abuse and her parenting responsibilities.
One CSB worker and the guardian ad litem expressed concernthat on two occasions the grandparents declined to take care ofthe boys for several days. The first occasion was in February1998, when the court was prepared to place Stanley in jail oncontempt. CSB contacted the grandparents to see if they couldcare for the children, including Bianca who had extensive medicalneeds, for those three days. However, the grandmother was stillrecovering from surgery on her leg, so the grandparents declinedto take the children. In early July 1998, the foster mother askedthe grandparents to take the boys for a week so the foster familycould have a respite. However, grandmother had a postoperativeinfection subsequent to her April bladder surgery, and again hadto decline to take care of the boys. This was the last contactanyone from CSB, the foster family, or the guardian ad litem hadwith the grandparents until January 19, 1999, when the guardian adlitem called the grandparents. The guardian ad litem acknowledgedthat she did not follow up with the grandparents after June 1998,to inquire why their involvement with the boys had been sominimal.
The CSB worker conducted an investigation of the grandparents as well as a home study of the grandparents' home. The investigation revealed that the grandparents have no police records. Both grandparents are now in good health. The grandfather is retired, and will be able to transport the boys to appointments for ongoing supportive services.
Although the CSB professionals on the case plan team wanted asix-month extension of temporary custody in order to pursueplacement with the grandparents, the guardian ad litem opined that any home is better than the grandparents' home. Such a summary statement was totally unwarranted where there was no investigation of the grandparents as potential legal custodians and where the evidence clearly established that the boys were very close to these grandparents. The trial court stated in its judgment entry that the grandparents had a "limited history with these boys." However, this conclusion is not supported by the evidence. The boys had lived with the grandparents for five months and had an ongoing relationship with them.
In summary, the evidence established that there was a strong bond between the boys and their mother, their grandparents, and one another. Whatever bond existed with the foster family was about to be broken, due to a change in foster family anticipated in the near future. The boys, aged ten and nine, expressed to several CSB workers that they wanted to live with their mother, or in the alternative, with their grandparents. The evidence was clear that there was no immediate prospect of a permanent placement through CSB, and that there was a reasonable possibility that a legally secure placement could be achieved by granting legal custody to the grandparents. It was also quite possible that once CSB had permanent custody of Carlos and Angel, these boys would be separated from one another, which everyone agreed would not be in the boys' best interest.
The single factor supporting a finding that the trial court's best interest determination was "the wishes of the child[ren], as expressed * * * through the child[ren]'s guardian ad litem" R.C.2151.414(D)(2). However, the guardian ad litem's expression of the children's "wishes" fails to comport with any statutory or other reasonable factor and is not based upon a reasonable investigation. See R.C. 2151.281(I). The guardian ad litem
opined that permanent custody was in the boys' best interest even though they might not be adopted, and even though they might be separated from one another, which the testimony of treatment providers established as the single most important consideration.
In the instant case, there was no competent credible evidence that a grant of permanent custody to CSB was in the best interest of Angel and Carlos, based on the factors listed in R.C.2151.414(D). Nor was there competent credible evidence that permanent custody was in the best interest of Angel and Carlos, based on other relevant factors not explicitly listed in the statute. This court finds that Stanley's second assignment of error well taken, and overrules the determination of the trial court that permanent custody is in the best interest of Angel and Carlos.
 III.
Termination of parental rights requires both a best interest determination and a finding that the children cannot or should not be placed with the parent. There was no competent credible evidence to support the trial court's best interest determination. Having so concluded, we need not address Stanley's first assignment of error.
The judgment of the trial court is reversed.
 Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee. Exceptions.
 ________________________________ WILLIAM R. BAIRD, FOR THE COURT.
BATCHELDER, P.J. and WHITMORE, J. CONCUR.
[1] The inconsistency may be explained, at least in part, by the fact that the only expression of an appellee's position in this court is presented by the Prosecuting Attorney, in a brief which purports to be submitted on behalf of the State of Ohio, an entity not identified anywhere else in these proceedings as a party.
[2] All three children have the same father, Carlos Urbano Zaragoza-Castillo. Castillo is a Mexican national, now believed to be in a Mexican prison. At the time Stanley met Castillo in 1986, he was residing in Arizona, where Stanley lived with her mother and brother. Because Castillo was not in the United States legally, he took on an assumed name, Estrada. The eldest child, Carlos, was given the last name Estrada.
Stanley reported that Castillo was severely abusive toward her and the children. Castillo and Stanley had been residing in Idaho from 1986 to 1992. In 1992, Castillo decided to return to Mexico to engage in some drug dealing. Stanley soon learned that Castillo had been apprehended and incarcerated. In December 1992, Stanley decided to return to Ohio, where her mother and brother lived. Castillo has not been involved with this family since 1992. Castillo was served with notice of the various court actions by publication, because his whereabouts are unknown. His parental rights for all three children were terminated by the trial court. He has not appealed.
[3] Bianca was born with spina bifida and had extensive medical needs which Stanley was unable to provide for. In May 1999, just prior to the permanent custody hearing for Angel and Carlos, Stanley agreed to voluntarily surrender permanent custody of Bianca to CSB. Stanley does not appeal the award of permanent custody of Bianca to CSB.
[4] Stanley separately appealed the termination of parental rights as to Carlos and as to Angel. This court consolidated both cases. Stanley filed a separate appellate brief for each boy and the prosecutor, representing CSB, filed a separate brief for each boy as well. With due respect for the individuality of these two children, this court will discuss the facts and the analysis involved in this case with reference to both boys. Neither boy has any special need or circumstance that would require a disposition different from that of his brother.
[5] CSB filed a motion for permanent custody on March 18, 1999. Substantial amendments to the text of R.C. 2151.414 took effect on March 18, 1999. This court has previously held that where the motion for permanent custody was filed prior to the effective date of the amendments, the former version of the statute must apply. See In re Thorn and Hammond (Feb. 16, 2000), Summit App. No. 19597, unreported, at 7, fn. 2, citing In re Seal (Mar. 16, 1998), Clermont App. No. CA-97-07-066, unreported, at fn. 3.
In the instant case, a motion for permanent custody was filed by the guardian ad litem on January 26, 1999, prior to CSB's motion for permanent custody and prior to the effective date of the new statute. R.C. 2151.415 (F) provides that:
 The court, on its own motion or the motion of the agency or person with legal custody of the child, the child's guardian ad litem, or any other party to the action, may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section.
See, also, In re Shepherd (Sept. 29, 1999), Highland App. No. 99CA04, unreported (interpreting statute to grant to juvenile's legal guardian standing to file motion for permanent custody to children's services); In re Brian L.
(Feb. 25, 2000), Wood App. No. WD-99-038, unreported (holding that a juvenile's guardian ad litem had standing to file a motion for grant of permanent custody to children's services board). Among the possible dispositional orders provided for in division (A)(1) to (5) is the permanent termination of parental rights. R.C. 2151.415(A)(4).
Thus, when the guardian ad litem filed her motion to grant permanent custody to CSB, Stanley was put in jeopardy of losing her children. On February 2, 1999, the trial court set a date for the permanent custody hearing on the motion filed by the guardianad litem. The guardian's motion for permanent custody was an action taken under the prior version of the statute. In determining whether to grant permanent custody to CSB, the trial court was obliged to apply the law which existed at the time of the guardian's motion, which was the prior version of the statute. See R.C. 1.58(A)(1). It appears that is exactly what the trial court did.
[6] The guardian ad litem was not an attorney. Because CSB was no longer pursuing permanent custody, the court appointed a separate attorney to represent the guardian ad litem at the hearing.